IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE REVIEW OF
ISSUES CONCERNING
REPRESENTATION OF INDIGENT
DEFENDANTS IN CRIMINAL AND
JUVENILE DELINQUENCY CASES.

ADKT No. 411

**FILED**

JAN 0 4 2008

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

O R D E R

WHEREAS, the United States and Nevada constitutions provide that every individual charged with a serious crime is entitled to legal representation, even if that individual cannot afford counsel, and competent representation of indigents is vital to our system of justice; and

WHEREAS, on April 26, 2007, the Nevada Supreme Court ordered that the Indigent Defense Commission be created for the purposes of studying the issues and concerns with respect to the selection, appointment, compensation, qualifications, performance standards and caseloads of counsel assigned to represent indigent defendants in criminal and juvenile delinquency cases throughout Nevada and designated the Honorable Michael A. Cherry, Associate Justice, as chair of the Commission; and

WHEREAS, the Commission conducted a statewide survey of indigent defense services in June and July 2007, met numerous times between May 2007 and October 2007, formed subcommittees, and completed a report on the matter; and

WHEREAS, on November 20, 2007, the Commission filed its report with this court making numerous unanimous recommendations to promote the independence of the court-appointed public defense system,

SUPREME COURT
OF
NEVADA

(O) 1947A

establish performance and caseload standards for public defenders,[1] and ensure the consistency of indigent defense in the rural counties; and

WHEREAS, this court conducted public hearings on December 14, 2007, and December 20, 2007, to consider the Commission's report and hear public comment on the issues concerning the defense of indigents; accordingly,

IT IS HEREBY ORDERED that the following recommendations from the Commission's report are adopted.

### Determination of Indigency

WHEREAS, any defendant charged with a public offense who is indigent may request the appointment of counsel by showing that he is without means to employ an attorney and suffers a financial disability;[2] and

WHEREAS, the methods utilized in Nevada's courts and public defender offices to determine who is eligible for defense services at public expense vary widely;

IT IS HEREBY ORDERED that effective immediately, the standard for determining indigency shall be:

> A person will be deemed 'indigent' who is unable, without substantial hardship to himself or his dependents, to obtain competent, qualified legal counsel on his or her own. 'Substantial hardship' is presumptively determined to include all defendants who receive public assistance, such as Food Stamps, Temporary Assistance for Needy Families, Medicaid,

---

[1]The Commission's report included two separate minority reports specifically relating to uniform caseload standards and opposing the imposition of such standards.

[2]NRS 171.188

 

Disability Insurance, reside in public housing, or earn less than 200 percent of the Federal Poverty Guideline.  A defendant is presumed to have a substantial hardship if he or she is currently serving a sentence in a correctional institution or housed in a mental health facility.

Defendants not falling below the presumptive threshold will be subjected to a more rigorous screening process to determine if their particular circumstances, including seriousness of charges being faced, monthly expenses, and local private counsel rates, would result in a substantial hardship were they to seek to retain private counsel.

Independence of the Court-Appointed
Public Defense System from the Judiciary

WHEREAS, participation by the trial judge in the appointment of counsel, other than public defenders and special public defenders, and in the approval of expert witness fees and attorney fees creates an appearance of impropriety; and

WHEREAS, the appointment of counsel, approval of fees, and determination of indigency should be performed by an independent board, agency, or committee, or by judges not directly involved in the case;

WHEREAS, the selection of lawyers, other than public defenders and special public defenders, to represent indigent defendants should be made by the administrators of an indigent defense program; and

WHEREAS, the unique circumstances and case management systems existent in the various judicial districts require particularized administrative plans to carry out the recommendations of the Commission contained on page 11 of the Report;

IT IS HEREBY ORDERED that each judicial district shall formulate and submit to the Nevada Supreme Court for approval by May 1,

2008, an administrative plan that excludes the trial judge or justice of the peace hearing the case and provides for: (1) the appointment of trial counsel, appellate counsel in appeals not subject to the provisions of Nevada Rule of Appellate Procedure 3C, and counsel in post-conviction matters; (2) the approval of expert witness fees, investigation fees, and attorney fees; and (3) the determination of a defendant's indigency in the courts within the district; and

IT IS FURTHER ORDERED that each municipal court shall submit any existing administrative plan or formulate and submit to the Nevada Supreme Court for approval by May 1, 2008, an administrative plan that excludes the trial judge or justice of the peace hearing the case and provides for: (1) the appointment of trial counsel and appellate counsel; (2) the approval of expert witness fees, investigation fees, and attorney fees; and (3) the determination of a defendant's indigency in each of their courts.

## Performance Standards

WHEREAS, the paramount obligation of criminal defense counsel in indigent defense cases is to provide zealous and quality representation at all stages of criminal proceedings, adhere to ethical norms, and abide by the rules of the court; and

WHEREAS, the performance standards unanimously recommended by the Commission provide guidelines that will promote effective representation by appointed counsel;

IT IS HEREBY ORDERED that the performance standards contained in Exhibit A to this order are to be implemented effective April 1, 2008.

SUPREME COURT
OF
NEVADA

(O) 1947A

### Caseload Standards

WHEREAS, the average caseload for attorneys in the Clark County Public Defender's Office was 364 felony and gross misdemeanor cases in 2006, and the average caseload for attorneys in the Washoe County Public Defender's Office was 327 felony and gross misdemeanors; and

WHEREAS, the National Legal Aid and Defender Association has set the recommended caseload standard for attorneys handling felony cases at 150 per attorney;[3] and

WHEREAS, a majority of the Commission concludes that caseloads in Clark County and Washoe County substantially exceed recommended caseloads and that a caseload standard of no more than 192 felony and gross misdemeanors per attorney should be implemented; and

WHEREAS, by any reasonable standard, there is currently a crisis in the size of the caseloads for public defenders in Clark County[4] and Washoe County; and

WHEREAS, Nevada Rule of Professional Conduct 6.2(a) provides that good cause exists for a lawyer to seek to avoid appointment to represent a person where accepting the appointment is likely to result in violation of the Rules of Professional Conduct or other law; and

WHEREAS, Nevada Rules of Professional Conduct 1.1 and 1.3 require a lawyer to refrain from taking on more cases than he or she can competently and diligently handle; and

---

[3]We note that, contrary to the statement in the Commission's report, the American Bar Association has not adopted the NLADA's standards, which have been in existence since 1973 without any material change.

[4]Notwithstanding the excessive caseload for public defenders in Clark County, we note that the Clark County Commission added only a single deputy public defender position in the most recent budget.

WHEREAS, the public defenders in Clark County and Washoe County have deferred advising the county commissioners of their unavailability to accept appointments even if accepting further appointments might compromise the ability of the public defenders to represent their clients; and

WHEREAS, Clark County and Washoe County requested the opportunity to perform and have agreed to fund a weighted caseload study prior to the adoption of any uniform caseload standards; and

WHEREAS, the court believes such a study would benefit the Nevada State Public Defender's Office; and

WHEREAS, the performance of a recognized weighted caseload study requires extensive timekeeping which will impose additional work on the public defenders, further limiting the public defender's ability to represent indigent defendants in criminal and juvenile delinquency cases;[5] and

WHEREAS, the public defenders recognize that the adoption of uniform caseload standards would require a period of gradual implementation; accordingly,

IT IS HEREBY ORDERED that the public defenders in Clark County and Washoe County shall advise the county commissioners of their respective counties when they are unavailable to accept further appointments based on ethical considerations relating to the their ability to comply with the performance standards contained in Exhibit A to this order and to represent their clients in accordance with the Rules of Professional Conduct, and that

---

[5]The Nevada State Public Defender's Office already maintains timekeeping records from which a weighted case study can be prepared for that office.

the decision to advise the county commissioners of unavailability shall take into consideration any additional requirements placed on the public defenders' offices in order to prepare a weighted caseload study; and

IT IS FURTHER ORDERED that the Clark County Public Defender and the Washoe County Public defender shall each perform weighted caseload studies for their offices according to a recognized protocol for both criminal and juvenile delinquency cases, taking into consideration the approved performance standards, and submit the results to the Nevada Supreme Court by July 15, 2008; and

IT IS FURTHER ORDERED that the Nevada State Public Defender's Office shall perform a weighted caseload study according to a recognized protocol for both criminal and juvenile delinquency cases, taking into consideration the approved performance standards, and submit the results to the Nevada Supreme Court by July 15, 2008;[6] and

IT IS FURTHER ORDERED that consideration of the implementation of caseload standards will be continued at a hearing to be held at 2:00 p.m. on Friday, September 5, 2008; and

IT IS FURTHER ORDERED that the Administrative Office of the Courts shall develop a method of retrieving uniform statistics regarding the nature and quality of services to indigent defendants including, but not necessarily limited to, demographic data regarding the age, sex, race and ethnicity of each defendant represented; and

---

[6]The Commission unanimously recommended that indigent defendants in all counties, except Clark, Elko and Washoe, be represented by the Nevada State Public Defender's Office, which office should be funded entirely by the state general fund. The court has directed supplemental briefing from the Nevada State Public Defender's Office on this issue and will further consider the Commission's recommendation on August 26, 2008.

IT IS FURTHER ORDERED that a permanent statewide commission for the oversight of indigent defense shall be established and appointed by the Nevada Supreme Court with the advice of the Indigent Defense Commission.

Dated this _4th_ day of January, 2008.

_____, J.
Hardesty

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Douglas

MAUPIN, C.J., with whom CHERRY and SAITTA, JJ., agree, dissenting in part:

I agree with the majority with one exception. Based upon my own experience as a practicing lawyer and a former public defender, I believe that any weighted caseload study will confirm the validity of the Commission's recommendations for the implementation of caseload standards. In my view, these standards should be adopted effective July 1, 2008.[7]

_____, C.J.
Maupin

We concur:

_____, J.
Cherry

_____, J.
Saitta

cc:   Members of the Indigent Defense Commission
      Kathy A. Hardcastle, Chief Judge, Eighth Judicial District
      Charles J. Short, Court Executive Officer
      Hon. Jerome M. Polaha, Chief Judge
      Howard W. Conyers, Washoe District Court Clerk
      All District Court Judges
      Administrative Office of the Courts

_____

[7]In this, I suspect that the caseload standards may actually be too rigorous to satisfy the Sixth Amendment to the United States Constitution.

NEVADA INDIGENT DEFENSE
STANDARDS OF PERFORMANCE

## CAPITAL CASE REPRESENTATION

### Standard 1:  The Defense Team and Services of Experts in Capital Cases

**(a)**  The Defense Team

The defense team should:

1.  consist of no fewer than two attorneys qualified in accordance with Standard 2, an investigator, and a mitigation specialist; and

2.  contain at least one member qualified by training and experience to screen individuals for the presence of mental or psychological disorders or impairments.

**(b)**  Expert and Ancillary Services

1.  Counsel should:

  (A)  secure the assistance of all expert, investigative, and other ancillary professional services reasonably necessary or appropriate to provide high-quality legal representation at every stage of the proceedings;

  (B)  have the right to have such services provided by persons independent of the government; and

  (C)  have the right to protect the confidentiality of communications with the persons providing such services to the same extent as would counsel paying such persons from private funds.

2.  The appointing authority should specifically ensure provision of such services to private attorneys whose clients are financially unable to afford them.

### Standard 2:  Appointment, Retention, and Removal of Defense Counsel

**(a)**  Qualifications of Defense Counsel

1.  The appointing authority should develop and publish qualification standards for defense counsel in capital cases. These standards should be

**ADKT 411 Exhibit A: Page 1**

construed and applied in such a way as to further the overriding goal of providing each client with high-quality legal representation.

2. In formulating qualification standards, the appointing authority should ensure that every attorney representing a capital defendant has:

   (A) obtained a license or permission to practice in the jurisdiction;

   (B) demonstrated a commitment to providing zealous advocacy and high-quality legal representation in the defense of capital cases; and

   (C) satisfied the training requirements set forth in Standard 3.

3. The appointing authority should ensure that the pool of defense attorneys as a whole is such that each capital defendant within the jurisdiction receives high-quality legal representation. Accordingly, the qualification standards should ensure that the pool includes sufficient numbers of attorneys who have demonstrated:

   (A) substantial knowledge and understanding of the relevant state, federal, and international law, both procedural and substantive, governing capital cases and skill in the management and conduct of complex negotiations and litigation;

   (B) skill in legal research, analysis, and the drafting of litigation documents;

   (C) skill in oral advocacy;

   (D) skill in the use of expert witnesses and familiarity with common areas of forensic investigation, including fingerprints, ballistics, forensic pathology, and DNA evidence;

   (E) skill in the investigation, preparation, and presentation of evidence bearing upon mental status;

   (F) skill in the investigation, preparation, and presentation of mitigating evidence; and

   (G) skill in the elements of trial advocacy, such as jury selection, cross-examination of witnesses, and opening and closing statements.

**(b)** Workload

The appointing authority should implement effectual mechanisms to ensure that the workload of attorneys representing defendants in death penalty cases is maintained at a level that enables counsel to provide each client with

high-quality legal representation in accordance with the Nevada Indigent Defense Standards of Performance.

**(c)** Monitoring; Removal

1. The appointing authority should monitor the performance of all defense counsel to ensure that the client is receiving high-quality legal representation. Where there is evidence that an attorney is not providing high-quality legal representation, the responsible agency should take appropriate action to protect the interests of the attorney's current and potential clients.

2. The appointing authority should establish and publicize a regular procedure for investigating and resolving any complaints made by judges, clients, attorneys, or others that defense counsel failed to provide high-quality legal representation.

3. The appointing authority should periodically review the rosters of attorneys who have been certified to accept appointments in capital cases to ensure that those attorneys remain capable of providing high-quality legal representation. Where there is evidence that an attorney has failed to provide high-quality legal representation, the attorney should not receive additional appointments and should be removed from the roster. Where there is evidence that a systemic defect in a defender office has caused the office to fail to provide high-quality legal representation, the office should not receive additional appointments.

4. Before taking final action making an attorney or a defender office ineligible to receive additional appointments, the appointing authority should provide written notice that such action is being contemplated and give the attorney or defender office an opportunity to respond in writing.

5. An attorney or defender office sanctioned pursuant to this Standard should be restored to the roster only in exceptional circumstances.

6. The appointing authority should ensure that this standard is implemented consistently with standard 2, so that an attorney's zealous representation of a client cannot be cause for the imposition or threatened imposition of sanctions pursuant to this guideline.

## Standard 3: Training

**(a)**    Funds should be made available for the effective training, professional development, and continuing education of all members of the defense team, whether the members are employed by an institutional defender or are employed or retained by counsel appointed by the court.

**(b)**    Attorneys seeking to qualify to receive appointments should be required to satisfactorily complete a comprehensive training program in the defense of capital cases. Such a program should include, but not be limited to, presentations and training in the following areas:

1. relevant state, federal, and international law;
2. pleading and motion practice;
3. pretrial investigation, preparation, and theory development regarding guilt/innocence and penalty;
4. jury selection;
5. trial preparation and presentation, including the use of experts;
6. ethical considerations particular to capital defense representation;
7. preservation of the record and of issues for post-conviction review;
8. counsel's relationship with the client and his family;
9. post-conviction litigation in state and federal courts; and
10. the presentation and rebuttal of scientific evidence, and developments in mental health fields and other relevant areas of forensic and biological science.

**(c)**    Attorneys seeking to remain on the appointment roster should be required to attend and successfully complete, at least once every 2 years, a specialized training program that focuses on the defense of death penalty cases.

## Standard 4: Funding and Compensation

**(a)**    The appointing authority must ensure funding for the full cost of high-quality legal representation by the defense team and outside experts selected by counsel, as defined by these guidelines,.

**(b)**    Counsel in death penalty cases should be fully compensated at a rate that is commensurate with the provision of high-quality legal representation and reflects the extraordinary responsibilities inherent in death penalty representation.

    1.    Flat fees, caps on compensation, and lump-sum contracts are improper in death penalty cases.

    2.    Attorneys employed by defender organizations should be compensated according to a salary scale that is commensurate with the salary scale of the prosecutor's office in the jurisdiction.

    3.    Appointed counsel should be fully compensated for actual time and service performed at an hourly rate commensurate with the prevailing rates for similar services performed by retained counsel in the jurisdiction, with no distinction between rates for services performed in or out of court. Periodic billing and payment should be available.

**(c)**    Non-attorney members of the defense team should be fully compensated at a rate that is commensurate with the provision of legal representation and reflects the specialized skills needed by those who assist counsel with the litigation of death penalty cases.

    1.    Investigators employed by defender organizations should be compensated according to a salary scale that is commensurate with the salary scale of the prosecutor's office in the jurisdiction.

    2.    Mitigation specialists and experts employed by defender organizations should be compensated according to a salary scale that is commensurate with the salary scale for comparable expert services in the private sector.

    3.    Members of the defense team assisting private counsel should be fully compensated for actual time and service performed at an hourly rate commensurate with prevailing rates paid by retained counsel in the jurisdiction for similar services, with no distinction between rates for services performed in or out of court. Periodic billing and payment should be available.

**(d)**    Additional compensation should be provided in unusually protracted or extraordinary cases.

(e)      Counsel and members of the defense team should be fully reimbursed for reasonable incidental expenses.

## Standard 5:  Obligations of Counsel Respecting Workload

Counsel representing clients in death penalty cases should limit their caseloads to the level needed to provide each client with high-quality legal representation in compliance with the Nevada Indigent Defense Standards of Performance.

## Standard 6:  Role of the Defense Team

As soon as possible after appointment, counsel should assemble a defense team by selecting and making any appropriate contractual agreements with non-attorney team members in such a way that the team includes:

(a)      at least one mitigation specialist and one fact investigator;

(b)      at least one member qualified by training and experience to screen individuals for the presence of mental or psychological disorders or impairments;

(c)      any other members needed to provide high-quality legal representation; and

(d)      at all stages demanding on behalf of the client all resources necessary to provide high-quality legal representation. If such resources are denied, counsel should make an adequate record to preserve the issue for further review.

## Standard 7:  Relationship With the Client

(a)      Counsel at all stages of the case should:

    1.      make every appropriate effort to establish a relationship of trust with the client and should maintain close contact with the client;

    2.      conduct an interview of the client within 24 hours of initial counsel's entry into the case, barring exceptional circumstances;

    3.      promptly communicate in an appropriate manner with both the client and the prosecution regarding the protection of the client's rights

3.    promptly communicate in an appropriate manner with both the client and the prosecution regarding the protection of the client's rights against self-incrimination, to the effective assistance of counsel, and to preservation of the attorney-client privilege and similar safeguards; and

4.    at all stages of the case, re-advise the client and the prosecution regarding these matters as appropriate.

**(b)**   Counsel at all stages of the case should engage in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case, such as:

1.    the progress of and prospects for the factual investigation, and what assistance the client might provide to it;

2.    current or potential legal issues;

3.    the development of a defense theory;

4.    presentation of the defense case;

5.    potential agreed-upon dispositions of the case;

6.    litigation deadlines and the projected schedule of case-related events; and

7.    relevant aspects of the client's relationship with correctional, parole, or other governmental agents (e.g., prison medical providers or state psychiatrists).

## Standard 8:   Additional Obligations of Counsel Representing a Foreign National

**(a)**   Counsel at every stage of the case should make appropriate efforts to determine whether any foreign country might consider the client to be one of its nationals.

**(b)**   Unless predecessor counsel has already done so, counsel representing a foreign national should:

1.    immediately advise the client of his or her right to communicate with the relevant consular office; and

2.    obtain the consent of the client to contact the consular office. After obtaining consent, counsel should immediately contact the client's consular office and inform it of the client's detention or arrest.

## Standard 9: Investigation

**(a)**    Counsel at every stage has an obligation to conduct a thorough and independent investigation relating to the issues of both guilt and penalty.

    1.    The investigation regarding guilt should be conducted regardless of any admission or statement by the client concerning the facts of the alleged crime, or overwhelming evidence of guilt, or any statement by the client that evidence bearing upon guilt is not to be collected or presented.

    2.    The investigation regarding penalty should be conducted regardless of any statement by the client that evidence bearing upon penalty is not to be collected or presented.

**(b)**    Post-conviction counsel has an obligation to conduct a full examination of the defense provided to the client at all prior phases of the case. This obligation includes at minimum interviewing prior counsel and members of the defense team and examining the files of prior counsel.

**(c)**    Counsel at every stage has an obligation to assure that the official record of the proceedings is complete and to supplement the record as appropriate.

## Standard 10: Duty to Assert Legal Claims

**(a)**    Counsel at every stage of the case, exercising professional judgment in accordance with these standards, should:

    1.    consider all legal claims potentially available;

    2.    thoroughly investigate the basis for each potential claim before reaching a conclusion as to whether it should be asserted; and

    3.    evaluate each potential claim in light of:

        (A)   the unique characteristics of death penalty law and practice; and

(B)  the near certainty that all available avenues of post-conviction relief will be pursued in the event of conviction and imposition of a death sentence;

(C)  the importance of protecting the client's rights against later contentions by the government that the claim has been waived, defaulted, not exhausted, or otherwise forfeited; and

(D)  any other professionally appropriate risks and benefits to the assertion of the claim.

**(b)**  Counsel who decide to assert a particular legal claim should:

1.  present the claim as forcefully as possible, tailoring the presentation to the particular facts and circumstances in the client's case and the applicable law in the particular jurisdiction; and

2.  ensure that a full record is made of all legal proceedings in connection with the claim.

## Standard 11:  Duty to Seek an Agreed-Upon Disposition

**(a)**  Counsel at every stage of the case has an obligation to take all steps that may be appropriate in the exercise of professional judgment in accordance with these standards to achieve an agreed-upon disposition.

**(b)**  Counsel at every stage of the case should explore with the client the possibility and desirability of reaching an agreed-upon disposition. In so doing, counsel should fully explain the rights that would be waived, the possible collateral consequences, and the legal, factual, and contextual considerations that bear upon the decision. Specifically, counsel should know and fully explain to the client:

1.  the maximum penalty that may be imposed for the charged offense(s) and any possible lesser-included or alternative offenses;

2.  any collateral consequences of potential penalties less than death, such as forfeiture of assets, deportation, civil liabilities, and the use of the disposition adversely to the client in penalty phase proceedings of other prosecutions of the client as well as any direct consequences of

potential penalties less than death, such as the possibility and likelihood of parole, place of confinement, and good-time credits;

3.   the general range of sentences for similar offenses committed by defendants with similar backgrounds and the impact of any applicable sentencing guidelines or mandatory sentencing requirements;

4.   the governing legal regime, including, but not limited to, whatever choices the client may have as to the fact-finder and/or sentencer;

5.   the types of pleas that may be agreed to, such as a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere, or other plea that does not require the client to personally acknowledge guilt, along with the advantages and disadvantages of each;

6.   whether any agreement negotiated can be made binding on the court, penal/parole authorities, and any others who may be involved;

7.   the practices, policies, and concerns of the particular jurisdiction, the judge and prosecuting authority, the family of the victim, and any other persons or entities that may affect the content and likely results of plea negotiations;

8.   Concessions that the client might offer, such as:

(A)   an agreement to waive trial and to plead guilty to particular charges;

(B)   an agreement to permit a judge to perform functions relative to guilt or sentence that would otherwise be performed by a jury or vice versa;

(C)   an agreement regarding future custodial status, such as one to be confined in a more onerous category of institution than would otherwise be the case;

(D)   an agreement to forgo in whole or part legal remedies such as appeals, motions for post-conviction relief, and/or parole or clemency applications;

(E)   an agreement to provide the prosecution with assistance in investigating or prosecuting the present case or other alleged criminal activity;

     (F)    an agreement to engage in or refrain from any particular conduct, as appropriate to the case;

     (G)    an agreement with the victim's family, which may include matters such as a meeting between the victim's family and the client, a promise not to publicize or profit from the offense, the issuance or delivery of a public statement of remorse by the client, or restitution; and

     (H)    agreements such as those described in the foregoing subsections respecting actual or potential charges in another jurisdiction.

9.    Benefits the client might obtain from a negotiated settlement, including:

     (A)    a guarantee that the death penalty will not be imposed;

     (B)    an agreement that the defendant will receive a specified sentence;

     (C)    an agreement that the prosecutor will not advocate a certain sentence, will not present certain information to the court, or will engage in or refrain from engaging in other actions with regard to sentencing;

     (D)    an agreement that one or more of multiple charges will be reduced or dismissed;

     (E)    an agreement that the client will not be subject to further investigation or prosecution for uncharged alleged or suspected criminal conduct;

     (F)    an agreement that the client may enter a conditional plea to preserve the right to further contest certain legal issues;

     (G)    an agreement that the court or prosecutor will make specific recommendations to correctional or parole authorities regarding the terms of the client's confinement; and

     (H)    agreements such as those described in the foregoing subsections respecting actual or potential charges in another jurisdiction.

**(c)**    Counsel should keep the client fully informed of any negotiations for a disposition, convey to the client any offers made by the prosecution, and discuss with the client possible negotiation strategies.

**(d)**   Counsel should inform the client of any tentative negotiated agreement reached with the prosecution and explain to the client the full content of the agreement along with the advantages, disadvantages, and potential consequences of the agreement.

**(e)**   If a negotiated disposition would be in the best interest of the client, initial refusals by the prosecutor to negotiate should not prevent counsel from making further efforts to negotiate. Similarly, a client's initial opposition should not prevent counsel from engaging in an ongoing effort to persuade the client to accept an offer of resolution that is in the client's best interest.

**(f)**   Counsel should not accept any agreed-upon disposition without the client's express authorization.

**(g)**   The existence of ongoing negotiations with the prosecution does not in any way diminish the obligations of defense counsel respecting litigation.

## Standard 12:  Entry of a Plea of Guilty

**(a)**   The informed decision whether to enter a plea of guilty lies with the client.

**(b)**   In the event the client determines to enter a plea of guilty, prior to the entry of the plea, counsel should:

    1.   make certain that the client understands the rights to be waived by entering the plea and that the client's decision to waive those rights is knowing, voluntary, and intelligent;

    2.   ensure that the client understands the conditions and limits of the plea agreement and the maximum punishment, sanctions, and other consequences to which he or she will be exposed by entering the plea; and

    3.   explain to the client the nature of the plea hearing and prepare the client for the role he or she will play in the hearing, including answering questions in court, and providing a statement concerning the offense.

**(c)**   During entry of the plea, counsel should make sure that the full content and conditions of any agreements with the government are placed on the record.

## Standard 13: Trial Preparation Overall

As the investigations mandated by Standard 7 produce information, trial counsel should formulate a defense theory. Counsel should seek a theory that will be effective in connection with both guilt and penalty, and should seek to minimize any inconsistencies.

## Standard 14: Voir Dire and Jury Selection

**(a)**    Counsel should consider, along with potential legal challenges to the procedures for selecting the jury that would be available in any criminal case (particularly those relating to bias on the basis of race or gender), whether any procedures have been instituted for selection of juries in capital cases that present particular legal bases for challenge. Such challenges may include challenges to the selection of the grand jury and grand jury forepersons, as well as to the selection of the petit jury venire.

**(b)**    Counsel should be familiar with the precedents relating to questioning and challenging of potential jurors, including the procedures surrounding "death qualification" concerning any potential juror's beliefs about the death penalty. Counsel should be familiar with techniques:

1.    for exposing those prospective jurors who would automatically impose the death penalty following a murder conviction or finding that the defendant is death-eligible, regardless of the individual circumstances of the case;

2.    for uncovering those prospective jurors who are unable to give meaningful consideration to mitigating evidence; and

3.    for rehabilitating potential jurors whose initial indications of opposition to the death penalty make them possibly excludable.

**(c)**    Counsel should consider seeking expert assistance in the jury selection process.

**Standard 15:  Defense Case Concerning Penalty**

**(a)**    As set out in Standard 7, counsel at every stage of the case has a continuing duty to investigate issues bearing upon penalty and to seek information that supports mitigation or rebuts the prosecution's case in aggravation.

**(b)**    Counsel should discuss with the client early in the case the sentencing alternatives available and the relationship between the strategy for the sentencing phase and for the guilt/innocence phase.

**(c)**    Prior to the sentencing phase, trial counsel should discuss with the client the specific sentencing phase procedures of the jurisdiction and advise the client of steps being taken in preparation for sentencing.

**(d)**    Counsel at every stage of the case should discuss with the client the content and purpose of the information concerning penalty that they intend to present to the sentencing or reviewing body or individual, means by which the mitigation presentation might be strengthened, and the strategy for meeting the prosecution's case in aggravation.

**(e)**    Counsel should consider, and discuss with the client, the possible consequences of having the client testify or make a statement to the sentencing or reviewing body or individual.

**(f)**    In deciding which witnesses and evidence to prepare concerning penalty, the areas counsel should consider include the following:

    1.    witnesses familiar with and evidence relating to the client's life and development, from conception to the time of sentencing, that would be explanatory of the offense(s) for which the client is being sentenced, would rebut or explain evidence presented by the prosecutor, would present positive aspects of the client's life, or would otherwise support a sentence less than death;

    2.    expert and lay witnesses along with supporting documentation (e.g., school records, military records) to provide medical, psychological, sociological, cultural, or other insights into the client's mental and/or emotional state and life history that may explain or lessen the client's culpability for the underlying offense(s); to give a favorable opinion as to the client's capacity for rehabilitation or adaptation to prison; to

explain possible treatment programs; or otherwise support a sentence less than death; and/or to rebut or explain evidence presented by the prosecutor;

3. witnesses who can testify about the applicable alternative to a death sentence and/or the conditions under which the alternative sentence would be served;

4. witnesses who can testify about the adverse impact of the client's execution on the client's family and loved ones; and

5. demonstrative evidence, such as photos, videos, and physical objects (e.g., trophies, artwork, military medals), and documents that humanize the client or portray him positively, such as certificates of earned awards, favorable press accounts, and letters of praise or reference.

(g) In determining what presentation to make concerning penalty, counsel should consider whether any portion of the defense case will open the door to the prosecution's presentation of otherwise inadmissible aggravating evidence. Counsel should pursue all appropriate means (e.g., motions in limine) to ensure that the defense case concerning penalty is constricted as little as possible by this consideration and should make a full record in order to support any subsequent challenges.

(h) Trial counsel should determine at the earliest possible time what aggravating factors the prosecution will rely upon in seeking the death penalty and what evidence will be offered in support thereof. If the jurisdiction has rules regarding notification of these factors, counsel at all stages of the case should object to any noncompliance, and if such rules are inadequate, counsel at all stages of the case should challenge the adequacy of the rules.

(i) Counsel at all stages of the case should carefully consider whether all or part of the aggravating evidence may appropriately be challenged as improper, inaccurate, misleading, or not legally admissible.

(j) If the prosecution is granted leave at any stage of the case to have the client interviewed by witnesses associated with the government, defense counsel should:

1.    consider what legal challenges may appropriately be made to the interview or the conditions surrounding it;

2.    consider the legal and strategic issues implicated by the client's cooperation or noncooperation;

3.    ensure that the client understands the significance of any statements made during such an interview; and

4.    attend the interview.

**(k)**    Trial counsel should request jury instructions and verdict forms that ensure that jurors will be able to consider and give effect to all relevant mitigating evidence. Trial counsel should object to instructions or verdict forms that are constitutionally flawed, inaccurate, or confusing and should offer alternative instructions. Post-conviction counsel should pursue these issues through factual investigation and legal argument.

**(l)**    Counsel at every stage of the case should take advantage of all appropriate opportunities to argue why death is not suitable punishment for their particular client.

## Standard 16:  Official Presentence Report

If an official presentence report or similar document may or will be presented to the court at any time, counsel should become familiar with the procedures governing preparation, submission, and verification of the report. In addition, counsel should:

**(a)**    where preparation of the report is optional, consider the strategic implications of requesting that a report be prepared;

**(b)**    provide to the report preparer information favorable to the client. In this regard, counsel should consider whether the client should speak with the person preparing the report; if the determination is made to do so, counsel should discuss the interview in advance with the client and attend it;

**(c)**    review the completed report;

**(d)**    take appropriate steps to ensure that improper, incorrect, or misleading information that may harm the client is deleted from the report; and

(e)    take steps to preserve and protect the client's interests where the defense considers information in the presentence report to be improper, inaccurate, or misleading.

## Standard 17:  Duty to Facilitate the Work of Successor Counsel

In accordance with professional norms, all persons who are or have been members of the defense team have a continuing duty to safeguard the interests of the client and should cooperate fully with successor counsel. This duty includes, but is not limited to:

(a)    maintaining the records of the case in a manner that will inform successor counsel of all significant developments relevant to the litigation;

(b)    providing the client's files, as well as information regarding all aspects of the representation, to successor counsel;

(c)    sharing potential further areas of legal and factual research with successor counsel; and

(d)    cooperating with such professionally appropriate legal strategies as may be chosen by successor counsel.

## Standard 18:  Duties of Trial Counsel After Conviction

Trial counsel should:

(a)    be familiar with all state and federal post-conviction options available to the client. Trial counsel should discuss with the client the post-conviction procedures that will or may follow imposition of the death sentence;

(b)    take whatever action(s), such as filing a notice of appeal and/or motion for a new trial, will maximize the client's ability to obtain post-conviction relief;

(c)    not cease acting on the client's behalf until successor counsel has entered the case or trial counsel's representation has been formally terminated. Until that time, Standard 17 applies in its entirety; and

(d)    take all appropriate action to ensure that the client obtains successor counsel as soon as possible.

## Standard 19:  Duties of Post-Conviction Counsel

**(a)**   Counsel representing a capital client at any point after conviction should be familiar with the jurisdiction's procedures for setting execution dates and providing notice of them. Post-conviction counsel should also be thoroughly familiar with all available procedures for seeking a stay of execution.

**(b)**   If an execution date is set, post-conviction counsel should immediately take all appropriate steps to secure a stay of execution and pursue those efforts through all available forms.

**(c)**   Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high-quality capital defense representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.

**(d)**   The duties of the counsel representing the client on direct appeal should include filing a petition for certiorari in the Supreme Court of the United States. If appellate counsel does not intend to file such a petition, he or she should immediately notify successor counsel if known and the responsible agency.

**(e)**   Post-conviction counsel should fully discharge the ongoing obligations imposed by these standards, including the obligations to:

1.   maintain close contact with the client regarding litigation developments;

2.   continually monitor the client's mental, physical, and emotional condition for effects on the client's legal position;

3.   keep under continuing review the desirability of modifying prior counsel's theory of the case in light of subsequent developments; and

4.   continue an aggressive investigation of all aspects of the case.

## Standard 20:  Duties of Clemency Counsel

Clemency counsel should:

1.   be familiar with the procedures for and permissible substantive content of a request for clemency;

2.   conduct an investigation in accordance with Standard 7;

3.   ensure that clemency is sought in as timely and persuasive a manner as possible, tailoring the presentation to the characteristics of the particular client, case, and jurisdiction; and

4.   ensure that the process governing consideration of the client's application is substantively and procedurally just, and if not, should seek appropriate redress.

## APPELLATE AND POST-CONVICTION REPRESENTATION

### Standard 1:  Role of Appellate Defense Counsel

The paramount obligation of appellate criminal defense counsel is to provide zealous and quality representation to their clients at all stages of the appellate process. Attorneys also have an obligation to abide by ethical norms and act in accordance with the rules of the court. Trial counsel must advise the client of his or her right to appeal and any limits on that right. If the client chooses to proceed with an appeal, even if the attorney believes that the appeal is without merit or is not cognizable, trial counsel will assure that a Notice of Appeal is filed. If the client wishes to proceed with the appeal, against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court.

### Standard 2:  Identification of issues on appeal

In selecting issues to be presented on appeal, counsel should:

**(a)**    conduct a thorough review of the trial transcript, the pleadings, and docket entries in the case;

**(b)**    investigate potentially meritorious claims of error not reflected in the trial record when he or she is informed or has reason to believe that facts in support of such claims exist;

**(c)**    assert claims of error that are supported by facts of record that will benefit the defendant if successful, that possess arguable legal merit, and that should be recognizable by a practitioner familiar with criminal law and procedure who engages in diligent legal research;

**(d)**    not hesitate to assert claims that may be complex, unique, or controversial in nature, such as issues of first impression or arguments for change in the existing law;

**(e)**    inform the client when counsel has decided not to raise issues that the client desires to be raised and the reasons why the issues were not raised; and

**(f)**    consider whether there are federal constitutional claims that, in the event that relief is denied in the state appellate court, would form the basis for a

writ of habeas corpus in federal district court. Such claims should raise and argue the federal constitutional claims, unless counsel concludes that there is a tactical basis for not including such claims and the client assents.

## Standard 3:  Diligence and Accuracy

In presenting the appeal, counsel should:

**(a)**    be diligent in perfecting appeals and expediting prompt submission to the appellate court;

**(b)**    be accurate in referring to the record and the authorities upon which counsel relies in the presentation to the court of briefs and oral argument; and

**(c)**    not intentionally refer to or argue on the basis of facts outside the record on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice.

## Standard 4:  Duty to Meet With Trial Lawyers

In preparing the appeal, counsel should consult trial counsel in order to assist appellate counsel in understanding and presenting the client's issues on appeal.

## Standard 5:  Duty to Confer and Communicate With Client

In preparing and processing the appeal, counsel should:

**(a)**    assure that the client is able to contact appellate counsel telephonically during the pendency of the appeal including arrangements for the acceptance of collect telephone calls. Promptly after appointment or assignment to the appeal, counsel shall provide advice to the client, in writing, as to the method(s) which the client can employ to discuss the appeal with counsel;

**(b)**    discuss the merits, strategy, and ramifications of the proposed appeal with each client prior to the perfection and completion thereof. When possible, appellate counsel should meet in person with the client, and in all instances, counsel should provide a written summary of the merits and strategy to be

employed in the appeal along with a statement of the reasons certain issues will not be raised, if any. It is the obligation of the appellate counsel to provide the client with his or her best professional judgment as to whether the appeal should be pursued in view of the possible consequences and strategic considerations;

**(c)**   inform the client of the status of the case at each step in the appellate process, explain any delays, and provide general information to the client regarding the process and procedures that will be taken in the matter, and the anticipated timeframe for such processing;

**(d)**   provide the client with a copy of each substantive document filed in the case by both the prosecution and defense;

**(e)**   respond in a timely manner to all correspondence from clients, provided that the client correspondence is of a reasonable number and at a reasonable interval; and

**(f)**   promptly and accurately inform the client of the courses of action that may be pursued as a result of any disposition of the appeal and the scope of any further representation counsel will provide.

## Standard 6:  Duty to Seek Release during Appeal

Appellate counsel should file appropriate motions seeking release pending appeal when the granting of such motions is reasonably possible.

## Standard 7:  Responsibilities in "Fast Track" Appeals

If the conviction qualifies for "fast track" treatment under NRAP 3C, counsel shall fulfill the responsibilities set forth in the rule. In preparing the "fast track" statement, counsel should:

**(a)**   order a rough draft of those portions of the transcript provided for in NRAP 3C(d) in all cases in which trial counsel is not handling the appeal and in all other cases in which information from the proceedings is necessary for a fair determination of the issues to be raised on appeal;

**(b)**     thoroughly research the issues in the case and shall set forth all viable issues in the "fast track" statement provided for by NRAP 3C(e); and

**(c)**     consult with the client as to which issues should be presented in the statement.

## Standard 8: Post-Decision Responsibilities

If the decision of the appellate court is adverse to the client, appellate counsel should:

**(a)**     promptly inform the client of the decision and confer with the client with regard to the availability of rehearing or en banc reconsideration and the benefits or disadvantages of filing such a motion;

**(b)**     file a Motion for Rehearing and/or Request for en banc reconsideration if grounds for such a motion and/or request exist;

**(c)**     advise the client whether a petition for writ of certiorari to the United States Supreme Court is warranted and determine whether such a petition will be filed;

**(d)**     promptly advise the client of any remedies that are available in state or federal court for post-conviction review and shall advise the client of the applicable statute of limitations for filing for such relief;

**(e)**     advise the client of any claims such as ineffective assistance of counsel that may be available to the client but that will not be pursued by appellate counsel;

**(f)**     provide the client with any available forms for post-conviction relief and appointment of counsel; and

**(g)**     cooperate with the client and with post-conviction counsel in securing the trial and appellate record and investigation of potential claims for post-conviction relief.

## Standard 9: Post-Conviction Representation

Counsel appointed to represent a defendant in post-conviction proceedings should:

(a)    assure that the client is able to contact post-conviction counsel telephonically during the pendency of the appeal including arrangements for the acceptance of collect telephone calls. Promptly after appointment or assignment to the post-conviction case, counsel shall provide advice to the client, in writing, as to the method(s) that the client can employ to discuss the post-conviction proceeding with counsel;

(b)    consult with trial/appellate counsel and secure the entire trial and appeal file;

(c)    seek to litigate all issues, whether or not previously presented, that are arguably meritorious;

(d)    maintain close contact with the client and consult with the client on all decisions with regard to the content of any pleadings seeking collateral or post-conviction relief prior to the filing of any petition for post-conviction relief. When possible, post-conviction counsel should meet in person with the client and in all instances, counsel should provide a written summary of the merits and strategy to be employed in the post-conviction proceeding along with a statement of the reasons certain issues will not be raised, if any;

(e)    investigate all potentially meritorious claims that require factual support;

(f)    secure the services of investigators or experts where necessary to develop claims to be raised in the post-conviction petition;

(g)    raise all federal constitutional claims, along with appropriate citations, that are arguably meritorious; and

(h)    advise the client of remedies that may be available should post-conviction relief not be granted, including appeal from the denial and federal habeas corpus along with any applicable time limits for seeking such relief. Post-conviction counsel shall advise the client in writing if counsel will not be representing the client in any subsequent proceedings and shall provide advice on the steps that must be taken and the time limits that are applicable to appeals or the seeking of relief in the federal courts.

## FELONY AND MISDEMEANOR TRIAL CASES

### Standard 1:  Role of Defense Counsel

The paramount obligation of criminal defense counsel is to provide zealous and quality representation to their clients at all stages of the criminal process. Attorneys also have an obligation to abide by ethical norms and act in accordance with the rules of the court.

### Standard 2:  Education, Training, and Experience of Defense Counsel

**(a)**     To provide quality representation, counsel must be familiar with the substantive criminal law and the law of criminal procedure and its application in the courts of Nevada. Counsel has a continuing obligation to stay abreast of changes and developments in the law. Where appropriate, counsel should also be informed of the practice of the specific judge before whom a case is pending.

**(b)**     Prior to handling a criminal matter, counsel should have sufficient experience or training to provide quality representation and should move to be relieved as counsel should counsel determine at a later point that he or she does not possess sufficient experience or training to handle the case assigned.

### Standard 3:  Adequate Time and Resources

Counsel has an obligation to make available sufficient time, resources, knowledge, and experience to afford competent representation of a client in a particular matter before agreeing to act as counsel or accepting appointment. Counsel must maintain an appropriate, professional office in which to consult with clients and witnesses, and must maintain a system for receiving collect telephone calls from incarcerated clients.

## Standard 4:  Initial Client Interview

**(a)**  Preparing for Initial Interview: Prior to conducting the initial interview, the attorney should:

1. be familiar with the elements of each offense charged and the potential punishment;

2. obtain copies of relevant documents that are available, including copies of  any charging documents, recommendations, and reports made by agencies  concerning pretrial release, and law enforcement reports;

3. be familiar with legal criteria for determining pretrial release and the procedures that will be followed in setting those conditions;

4. be familiar with the different types of pretrial release conditions the court may set; and

5. be familiar with any procedures available for reviewing the judge's setting of bail.

**(b)**  Timing of the Initial Interview: Counsel should conduct the initial interview with the client as soon as practicable and sufficiently before any court proceeding so as to be prepared for that proceeding. When the client is in custody, counsel should attempt to conduct the interview within 48 hours of appointment to the case. The initial interview should be conducted in a confidential setting.

**(c)**  Contents of the Initial Interview: The purpose of the initial interview is both to inform the client of the charges/penalties and to acquire information from the client concerning pretrial release. Counsel should ensure at this and all successive interviews and proceedings that barriers to communication, such as differences in language or literacy are overcome.  Information that counsel should consider acquiring from the client includes, but is not limited to:

1. the client's ties to the community, including the length of time in the community,  family  relationships,  immigration  status,  and employment record and history;

2. the client's physical and mental health, education, and armed services record;

3.     the client's immediate medical needs;

4.     the client's criminal history and a determination of whether the client has other pending charges or is on supervision;

5.     the ability of the client to meet any financial conditions of release; and

6.     sources of verification (counsel should obtain permission from the client before contacting such sources).

**(d)**     The following information should be provided to the client in the initial interview:

1.     an explanation of the procedures that will be followed in setting the conditions of pretrial release;

2.     an explanation of the type of information that will be requested in any interview that may be conducted by a pretrial release agency and an explanation that the client should not make any statements regarding the offense;

3.     an explanation of the attorney-client privilege and instructions not to talk to anyone about the facts of the case without first consulting with the attorney;

4.     the charges and the potential penalties;

5.     a general procedural overview of the progression of the case;

6.     how and when counsel can be reached;

7.     when counsel will see the client next;

8.     realistic answers, where possible, to the client's most urgent questions; and

9.     what arrangements will be made or attempted for the satisfaction of the client's most pressing needs, e.g., medical or mental health attention, contact with family or employers.

## Standard 5:  Pretrial Release Proceedings

When a client is in custody, counsel should explore with the client the pretrial release of the client under the conditions most favorable to the client and attempt to secure that release.  Counsel should:

(a)    present to the appropriate judicial officer information about the client's circumstances and the legal criteria supporting release. Where appropriate, counsel should make a proposal concerning conditions of release that are least restrictive with regard to the client. Counsel should arrange for contact with or the appearance of parents, spouse, relatives, or other persons who may take custody of the client or provide third-party surety;

(b)    consider pursuing modification of the conditions of release under available procedures when the client is not able to obtain release under the conditions set by the court; and

(c)    explain to the client and any third party the available options, procedures, and risks in posting security if the court sets conditions of release.

## Standard 6:  Preliminary Hearings/Grand Jury Representation

(a)    Where the client is entitled to a preliminary hearing, the attorney should take steps to see that the hearing is conducted timely unless there are strategic reasons for not doing so.

(b)    In preparing for the preliminary hearing, the attorney should consider:

    1.    the elements of each offense charged;

    2.    the law for establishing probable cause;

    3.    the factual information that is available concerning probable cause;

    4.    the tactics of calling witnesses or calling the defendant as a witness and the potential for later use of the testimony; and

    5.    the tactics of proceeding without full discovery.

(c)    Counsel should meet with the client prior to the preliminary hearing. The client has the sole right to waive a preliminary hearing. Counsel must evaluate and advise the client regarding the consequences of such waiver and the tactics of full or partial cross-examination.

(d)    Where counsel becomes aware that his or her client is the subject of a grand jury investigation, appointed counsel should consult with the client to discuss the grand jury process, including the advisability and ramifications of the client testifying. Counsel should examine the facts in the case and determine whether the prosecution has fulfilled its obligation under Nevada law to

present exculpatory evidence and should make an appropriate record in that regard. Upon return of an indictment, counsel should determine if proper notice of the proceedings was provided and should obtain the record of the proceeding to determine if procedural irregularities or errors occurred that might warrant a challenge to the proceedings such as a writ of habeas corpus or a motion to quash the indictment.

## Standard 7:  Case Preparation and Investigation

(a)      Counsel should conduct, or secure the resources to conduct, a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

(b)      Counsel should:

1.      obtain and examine all charging documents, pleadings, and discovery;

2.      research and review the relevant statutes and caselaw to identify elements of the charged offense(s); defects in the prosecution such as statute of limitations or double jeopardy; and available defenses and required notices of those defenses;

3.      conduct an in-depth interview of the client to assist in shaping the investigation;

4.      attempt to locate all potential witnesses and have them interviewed. (If counsel conducts a witness interview, counsel should do so in the presence of a third person who can be called as a witness);

5.      request and secure discovery including exculpatory/impeaching information; names and addresses of prosecution witnesses and their prior statements and criminal records; the prior statements of the client and his or her criminal history; all papers, tapes, or electronic recordings relevant to the case; expert reports and data upon which they are based, statements of co-defendants, an inspection of physical evidence, all documents relevant to any searches conducted, 911 tapes

and dispatch reports, mental health, drug treatment, or other records of the client, victim, or witnesses and records of police officers as appropriate;

6.      inspect the scene of the offense as appropriate; and

7.      obtain the assistance of such experts as are appropriate to the facts of the case.

## Standard 8:  Pretrial Motions and Writs

(a)      Counsel should consider filing an appropriate motion whenever there exists a good-faith reason to believe that the applicable law may entitle the defendant to relief, which the court has discretion to grant.

(b)      The decision to file pretrial motions should be made after thorough investigation and after considering the applicable law in light of the circumstances of the case. Among the issues that counsel should consider addressing in a pretrial motion are:

1.      the pretrial custody of the client;

2.      the constitutionality of the implicated statute(s);

3.      any defects in the charging process or the charging document;

4.      severance of charges or defendants;

5.      discovery issues;

6.      suppression of evidence or statements;

7.      speedy trial issues; and

8.      evidentiary issues.

(c)      Counsel should determine whether a pretrial writ should be filed challenging the determination that probable cause exists. The decision whether to file a pretrial writ should be made based upon an examination of the preliminary hearing or grand jury transcripts. If transcripts are not available at the time of arraignment, appropriate steps should be taken to secure an extension of time to prepare the writ after the transcripts are received pursuant to NRS 34.700. Counsel shall advise the client as to the effect of filing a pretrial writ on his speedy trial rights and provide an evaluation of the likelihood of

success to assist in the decision, which rests with the client, after consultation with counsel.

**(d)**   Counsel should only withdraw or decide not to file a motion after careful consideration, and only after determining whether the filing of a motion may be necessary to protect the defendant's rights against later claims of waiver or procedural default.

**(e)**   Motions should be filed in a timely manner and with an awareness of the effect of filing the motion on the defendant's speedy trial rights. When an evidentiary hearing is scheduled on a motion, counsel's preparation for the hearing should include:

1.   investigation, discovery, and research relevant to the claim advanced;

2.   subpoenaing of all helpful evidence and witnesses; and

3.   full understanding of the burdens of proof, evidentiary principles, and trial court procedures applying to the hearing, including the benefits and costs of having the client testify.

**(f)**   Requests or agreements to continue a trial date shall not be made without consultation with the client.

**(g)**   Motions and writs should include citation to applicable state and federal law in order to protect the record for collateral review in federal courts.

## Standard 9:  Plea Negotiations

**(a)**   Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.

**(b)**   Counsel should:

1.   with the consent of the client explore diversion and other informal and formal admission or disposition agreements with regard to the allegations;

2.   fully explain to the client the rights that would be waived by a decision to enter into any admission or disposition agreement;

3.   keep the client fully informed of the progress of the negotiations;

4.   convey to the client any offers made by the prosecution and the advantages and disadvantages of accepting the offers;

5.   continue to preserve the client's rights and prepare the defense notwithstanding ongoing negotiations; and

6.   not enter into any admission or disposition agreement on behalf of the client without the client's authorization.

(c)   In developing a negotiation strategy, counsel must be completely familiar with:

1.   Concessions that the client might offer the prosecution as part of a negotiated settlement, including, but not limited to: not to proceed to trial on the merits of the charges; to decline from asserting or litigating any particular pretrial motions; an agreement to fulfill specified restitution conditions and/or participation in community work or service programs, or in rehabilitation or other programs; and providing the prosecution with assistance in prosecuting or investigating the present case or other alleged criminal activity.

2.   Benefits the client might obtain from a negotiated settlement, including, but not limited to, an agreement: that the prosecution will not oppose the client's release on bail pending sentencing or appeal; that the defendant may enter a conditional plea to preserve the right to litigate and contest certain issues affecting the validity of the conviction; to dismiss or reduce one or more of the charged offenses either immediately or upon completion of a deferred prosecution agreement; that the defendant will not be subject to further investigation or prosecution for uncharged alleged criminal conduct; that the defendant will receive, with the agreement of the court, a specified sentence or sanction or a sentence or sanction within a specified range; that the prosecution will take, or refrain from taking, at the time of sentencing and/or in communications with the Division of Parole and Probation, a specified position with respect to the sanction to be imposed on the client by the court; and that the defendant will receive, or the prosecution will recommend, specific

benefits concerning the accused's place and/or manner of confinement and/or release on parole.

**(d)**    In the decision-making process, counsel should:

1.    inform the client of any tentative negotiated agreement reached with the prosecution, explain to the client the full content of the agreement, and explain advantages, disadvantages, and potential consequences of the agreement; and

2.    not attempt to unduly influence the decision, as the decision to enter a plea of guilty rests solely with the client. Where counsel reasonably believes that acceptance of a plea offer is in the best interest of the client, counsel should advise the client of the benefits of this course of action.

**(e)**    Prior to the entry of the plea, counsel should meet with the client in a confidential setting that fosters full communication and:

1.    make certain that the client understands the rights he or she will waive by entering the plea and that the client's decision to waive those rights is knowing, voluntary, and intelligent;

2.    make certain that the client fully and completely understands the conditions and limits of the plea agreement and the maximum punishment, sanctions, and other consequences the client will be exposed to by entering the plea; and

3.    explain to the client the nature of the plea hearing and prepare the client for the role he or she will play in the hearing, including answering questions of the judge and providing a statement concerning the offense.

**(f)**    After entry of the plea, counsel should:

1.    be prepared to address the issue of release pending sentencing. Where the client has been released pretrial, counsel should be prepared to argue and persuade the court that the client's continued release is warranted and appropriate. Where the client is in custody prior to the entry of the plea, counsel should, where practicable, advocate for the client's release on bail pending sentencing; and

2.      make every effort to review and explain the plea proceedings with the client and to respond to any client questions and concerns.

## Standard 10:  Trial Preparation

**(a)**     The decision to proceed to trial with or without a jury rests solely with the client. Counsel should discuss the relevant strategic considerations of this decision with the client.

**(b)**     Where appropriate, counsel should have the following materials available at the time of trial:

1.      copies of all relevant documents filed in the case;

2.      relevant documents prepared by investigators;

3.      voir dire questions;

4.      outline or draft of opening statement;

5.      cross-examination plans for all prospective prosecution witnesses;

6.      direct examination plans for all prospective defense witnesses;

7.      copies of defense subpoenas;

8.      prior statements of all prosecution witnesses (e.g., preliminary hearing/grand jury transcripts, police reports/statements);

9.      prior statements of all defense witnesses;

10.     reports from all experts;

11.     a list and copies or originals of defense and prosecution exhibits;

12.     proposed jury instructions with supporting authority;

13.     copies of all relevant statutes or cases; and

14.     outline or draft of closing argument.

**(c)**     Counsel should be fully informed as to the rules of evidence and the law relating to all stages of the trial process, and should be familiar with legal and evidentiary issues that can reasonably be anticipated to arise in the trial.

**(d)**     Counsel should decide if it is beneficial to secure an advance ruling on issues likely to arise at trial (e.g., admissibility of evidence, use of prior convictions of defendant) and, where appropriate, counsel should prepare motions and memoranda in support of the defendant's position.

(e)     Throughout the trial process, counsel should endeavor to establish a proper record for appellate review. As part of this effort, counsel should request, whenever necessary, that all discussions and rulings be made on the record.

(f)     Counsel should advise the client as to suitable courtroom dress and demeanor. If the client is incarcerated or is not able to secure appropriate clothing for trial, counsel shall arrange for the provision of appropriate clothing for the client to wear in the courtroom.

(g)     Counsel should plan with the client the most convenient system for conferring throughout the trial. Where necessary, counsel should seek an order to facilitate conferences with the client.

(h)     If, during the trial, it appears to counsel that concessions to facts or offenses are strategically indicated, such concessions may only be made in consultation with, and with the consent of, the client.

(i)     Throughout preparation and trial, counsel should consider the potential effects that particular actions may have upon sentencing if there is a finding of guilt.

## Standard 11: Voir Dire and Jury Selection

In preparing for and conducting jury selection, counsel should:

(a)     be familiar with the law governing selection of the jury venire. Counsel should also be alert to any potential legal challenges to the composition or selection of the venire;

(b)     be familiar with the local practices and the individual trial judge's procedures for selecting a jury and should be alert to any potential legal challenges to these procedures;

(c)     seek access to any jury questionnaires that have been completed by jurors and should petition the court to use a special questionnaire when appropriate due to unique issues in the case;

(d)     should seek attorney-conducted voir dire and should develop, support, and file written voir dire questions if the court restricts attorney-conducted voir dire;

**(e)**     consider whether additional peremptory challenges should be requested due to the circumstances present in the case;

**(f)**     consider whether sensitive or unusual facts or circumstances of the case support sequestered voir dire of jurors;

**(g)**     consider challenging for cause all persons about whom a legitimate argument can be made for actual prejudice or bias relevant to the case when it is likely to benefit the client; and

**(h)**     object to and preserve all issues relating to the unconstitutional exclusion of jurors by the prosecutor.

## Standard 12:  Defense Strategy

Counsel should develop, in consultation with the client, an overall defense strategy. In deciding on defense strategy, counsel should consider whether the client's interests are best served by not putting on a defense case and instead relying on the prosecution's failure to meet its constitutional burden of proving each element beyond a reasonable doubt.

## Standard 13:  Trial

**(a)**     Counsel should anticipate weaknesses in the prosecution's proof and consider appropriate motions for judgment of acquittal at all appropriate stages of the litigation.

**(b)**     Counsel should consider the strategic advantages and disadvantages of entering into any stipulations.

**(c)**     In preparing for cross-examination, counsel should:

   1.     be prepared to question witnesses as to the existence of prior statements that they may have made or adopted;

   2.     consider the need to integrate cross-examination, theory, and theme of the defense;

   3.     avoid asking unnecessary questions that may hurt the defense case;

   4.     anticipate witnesses that the prosecution may call in its case-in-chief and on rebuttal;

5.      create a cross-examination plan for all anticipated witnesses;

6.      review all prior statements and testimony of the witnesses in order to be aware of all inconsistencies or variances;

7.      review relevant statutes, regulations, and policies applicable to police witnesses; and

8.      consider a pretrial motion or voir dire examination of prosecution experts to determine qualifications of the expert or reliability of the anticipated opinion.

## Standard 14:  Presenting the Defendant's Case

**(a)**      Counsel should develop, in consultation with the client, an overall defense strategy. In deciding on defense strategy, counsel should consider whether the client's interests are best served by not putting on a defense case and instead relying on the prosecution's failure to meet its constitutional burden of proving each element beyond a reasonable doubt.

**(b)**      Counsel should discuss with the client all of the considerations relevant to the client's decision to testify. Counsel should also be familiar with his or her ethical responsibilities that may be applicable if the client insists on testifying untruthfully. Counsel should maintain a record of the advice provided to the client and the client's decision concerning whether to testify.

**(c)**      Counsel should be aware of the elements of any affirmative defense and know whether, under the applicable law of the jurisdiction, the client bears a burden of persuasion or a burden of production.

**(d)**      In preparing for presentation of a defense case, counsel should, where appropriate, do the following:

1.      develop a plan for direct examination of each potential defense witness;

2.      determine the implications that the order of witnesses may have on the defense case;

3.      determine which facts necessary for the defense case can be elicited through the cross-examination of the prosecution's witnesses;

4.      consider the possible use of character witnesses;

5.     consider the need for expert witnesses and what evidence must be submitted to lay the foundation for the expert's testimony;

6.     review all documentary evidence that must be presented; and,

7.     review all tangible evidence that must be presented.

**(e)**   In developing and presenting the defense case, counsel should consider the implications it may have for a rebuttal by the prosecutor.

**(f)**   Counsel should prepare all witnesses for direct and possible cross-examination. Where appropriate, counsel should also advise witnesses of suitable courtroom dress and demeanor.

**(g)**   Counsel should conduct redirect examination as appropriate.

**(h)**   At the close of the defense case, counsel should seek an advisory instruction directing the jury to acquit when appropriate.


## Standard 15:  Jury Instructions

**(a)**   Counsel should be familiar with the appropriate rules of the court and the individual judge's practices concerning ruling on proposed instructions, charging the jury, use of instructions typically given, and preserving objections to the instructions.

**(b)**   Counsel should always submit proposed jury instructions in writing.

**(c)**   Where appropriate, counsel should submit modifications to instructions proposed by the State or the court in light of the particular circumstances of the case, including the desirability of seeking a verdict on a lesser-included offense. Counsel should provide citations to appropriate law in support of the proposed instructions.

**(d)**   Where appropriate, counsel should object to and argue against improper instructions proposed by the prosecution.

**(e)**   If the court refuses to adopt instructions requested by counsel, or gives instructions over counsel's objection, counsel should take all steps necessary to preserve the record, including ensuring that a written copy of proposed instructions is included in the record along with counsel's objection.

**(f)**   During delivery of the charge, counsel should be alert to any deviations from the judge's planned instruction, object to deviations unfavorable to the client, and if necessary, request additional or curative instructions.

**(g)**   If the court proposes giving supplemental instructions to the jury, either upon request of the jurors or upon their failure to reach a verdict, counsel should request that the judge state the proposed charge to counsel before it is delivered to the jury. Counsel should renew or make new objections to any additional instructions given to the jurors after the jurors have begun their deliberations.

## Standard 16:  Obligations of Counsel in Final Sentencing Hearings

Among counsel's obligations in the sentencing process are:

**(a)**   To correct inaccurate information that is potentially detrimental to the client and to object to information that is not properly before the Court in determining sentence. Counsel should further correct or move to strike any improper and harmful information from the text of the presentence report.

**(b)**   To present to the court all known and reasonably available mitigating and favorable information, including relevant expert testimony or reports.

**(c)**   To develop a plan that seeks to achieve the least restrictive and burdensome sentencing alternative that is most favorable to the client and that can reasonably be obtained based on the facts and circumstances of the offense, the client's background, the applicable sentencing provisions, and other information pertinent to the sentencing decision.

## Standard 17:  Preparation for Sentencing

In preparing for sentencing, counsel shall:

**(a)**   inform the client of the applicable sentencing requirements, options, alternatives, and the discretionary nature of sentencing guidelines including the rules concerning parole eligibility;

**(b)**   maintain contact with the client prior to the sentencing hearing and inform the client of the steps being taken in preparation for sentencing;

(c)     obtain from the client relevant information concerning his or her background and personal history, prior criminal record, employment history, skills, education, medical history and condition, and financial status and obtain from the client sources that can corroborate the information provided by the client;

(d)     request any necessary and appropriate client evaluations, including those for mental health and substance abuse;

(e)     ensure the client has an opportunity to examine the presentence report;

(f)     inform the client of his or her right to speak at the sentencing proceeding and assist the client in preparing the statement, if any, to deliver to the court;

(g)     inform the client of the effects that admissions and other statements may have upon an appeal, retrial, or other judicial proceedings, such as forfeiture or restitution proceedings;

(h)     inform the client of the sentence or range of sentences counsel will ask the court to consider;

(i)     where appropriate, collect affidavits to support the defense position and, where relevant, prepare witnesses to testify at the sentencing hearing; where necessary, counsel should specifically request the opportunity to present tangible and testimonial evidence;

(j)     prepare to address victim participation either through the victim impact statements or by direct testimony at sentencing; and

(k)     advise the client of the difference between testimony and allocution. If the client elects to testify, counsel should prepare the client for possible cross-examination by the prosecution where applicable.

## Standard 18: Official Presentence Report

(a)     Counsel should prepare the client for the interview with the official preparing the presentence report.

(b)     Counsel has a duty to become familiar with the procedures concerning the preparation, submission, and verification of the presentence investigation report. In addition, counsel shall:

1.    determine whether a presentence report will be prepared and submitted to the court prior to sentencing; where preparation of the report is optional, counsel should consider the strategic implications of waiving the report;

2.    provide to the official preparing the report relevant information favorable to the client, including, where appropriate, the client's version of the offense;

3.    attend any interview of the client by an agency presentence investigator where appropriate;

4.    review the completed report prior to sentencing;

5.    take appropriate steps to ensure that erroneous or misleading information that may harm the client is deleted from the report;

6.    take appropriate steps to preserve and protect the client's interests where the defense challenges information in the presentence report as being erroneous or misleading; and

7.    make sure that, if there is a significant change in the information contained in the report by the judge at the sentencing hearing, counsel takes reasonable steps to ensure that a corrected copy is sent to corrections officials.

## Standard 19:  Sentencing Hearing

**(a)**    At the sentencing proceeding, counsel shall take steps necessary to advocate fully for the requested sentence and to protect the client's interest.

**(b)**    Counsel shall endeavor to present supporting evidence, including testimony of witnesses, to establish the facts favorable to the client.

**(c)**    Where appropriate, counsel shall request specific orders or recommendations from the court concerning alternative sentences and forms of incarceration.

**(d)**    Counsel should obtain a copy of the judgment and review it promptly to determine that it is accurate or to take steps to correct any errors.

**Standard 20:  Post-Disposition Responsibilities**

Counsel should be familiar with the procedures available to the client after disposition. Counsel should:

**(a)**    be familiar with the procedures to request a new trial, including the time period for filing such a motion, the effect it has upon the time to file a notice of appeal, and the grounds that can be raised;

**(b)**    inform the client of his or her right to appeal a conviction after trial, after a conditional plea or after a guilty plea that was not entered in a knowing, intelligent, and voluntary manner. Counsel should also advise the client of the legal effect of filing or waiving an appeal, and counsel should document the client's decision. If the client wishes to appeal after consultation with counsel, even if counsel believes that an appeal will not be successful or is not cognizable, the attorney should file the notice in accordance with the rules of the court and take such other steps as are necessary to preserve the client's right to appeal;

**(c)**    fulfill the responsibilities set forth in NRAP 3C if the conviction qualifies for "fast track" treatment under the rule. Counsel shall order a rough draft of those portions of the transcript provided for in NRAP 3C(d) in all cases in which trial counsel is not handling the appeal and in all other cases in which information from the proceedings is necessary for a fair determination of the issues to be raised on appeal. Counsel shall thoroughly research the issues in the case and shall set forth all viable issues in the "fast track" statement provided for by NRAP 3C(e);

**(d)**    timely respond to requests from appellate counsel for information about or documents from the case, when appellate counsel was not trial counsel;

**(e)**    inform the client of any right that may exist to be released pending disposition of the appeal;

**(f)**    consider requesting a stay of execution of the judgment to permit the client to report directly to the place of confinement, if a custodial sentence is imposed;

**(g)**    include in the advice to the client an explanation of the limited nature of the relief available on direct appeal and, where appropriate, an explanation of the remedies available to him or her in post-conviction proceedings. Counsel

should provide a pro se habeas packet to any client who needs assistance in preparing his or her pro se habeas corpus petition. Counsel should advise the client of the relevant time frames for filing state and federal habeas corpus petitions and provide information and advice necessary to protect a client's right to post-conviction relief; and

**(h)** inform the client of any procedures available for requesting that the record of conviction be expunged or sealed.

## JUVENILE DELINQUENCY CASES

Counsel for juveniles in delinquency proceedings should abide by the Nevada Indigent Defense Standards of Performance applicable to felony and misdemeanor cases where applicable. The performance standards set forth below recognize the need to meet some concerns particular to representation of juveniles in delinquency proceedings.

## Standard 1: The Role of Defense Counsel

(a)    The role of counsel in delinquency cases is to be an advocate for the child. Counsel should:

1.    Ensure that the interests and rights of the client are fully protected and advanced irrespective of counsel's opinion of the client's culpability;

2.    fully explain to the juvenile the nature and purpose of the proceedings and the general consequences of the proceeding, seeking all possible aid from the juvenile on decisions regarding court proceedings;

3.    make sure the juvenile fully understands all court proceedings, as well as all his or her rights and defenses;

4.    upon appointment, counsel should first seek to meet separately with the juvenile out of the presence of the parent;[1]

5.    not discuss any attorney-client privileged communications with the parent, or any other person, without the express permission of the juvenile;

6.    fully inform both the juvenile and juvenile's parents about counsel's role, especially clarifying the lawyer's obligation regarding confidential communications;

---

[1]The use of the word "parent" in these Standards refers to parent, guardian, custodial adult, or person assuming legal responsibility for the child.

7.  present the juvenile with comprehensible choices, help the juvenile reach his or her own decisions, and advocate the juvenile's viewpoint and wishes to the court; and

8.  refrain from waiving substantial rights or substituting counsel's own view, or the parents' wishes, for the position of the juvenile.

**(b)**  Counsel may request the appointment of a guardian ad litem, or may elect not to oppose such an appointment, only when very unusual circumstances warrant such an appointment. Every effort should be made to limit the role of the guardian ad litem to the minimum required for him/her to accomplish the purpose for which the appointment was made. In most cases, both the guardian and the client should be instructed not to discuss the facts of the case as this discussion may not be privileged.

## Standard 2: Education, Training, and Experience of Defense Counsel

**(a)**  Counsel who undertake the representation of a client in a juvenile delinquency proceeding shall have the knowledge and experience necessary to represent a child diligently and effectively.

**(b)**  Counsel should consider working with an experienced juvenile delinquency practitioner as a mentor when beginning to represent clients in delinquency cases.

**(c)**  At a minimum, counsel should attend 4 hours of CLE relevant to juvenile defense annually.

**(d)**  Counsel shall familiarize themselves with Nevada statutes relating to delinquency proceedings, as well as the Nevada Rules of Criminal Procedure, Nevada Rules of Evidence, Nevada Rules of Appellate Procedure, relevant caselaw, and any relevant local court rules.   Counsel should be knowledgeable about and seek ongoing formal and informal training in the following areas:

1.  Competency and Developmental Issues:

    (A)  Child and adolescent development;

    (B)  Brain development;

ADKT 411 Exhibit A: Page 45

    (C)   Mental health issues, common childhood diagnoses, and other disabilities; and

    (D)   Competency issues and the filing and processing of motion for competency evaluations.

2.    Attorney/Client Interaction:

    (A)   Interviewing and communication techniques for interviewing and communicating with children, including police interrogations and <u>Miranda</u> considerations;

    (B)   Ethical issues surrounding the representation of children and awareness of the role of the attorney; and

    (C)   Awareness of the role of the attorney versus the role of the guardian ad litem, including knowledge of how to work with a guardian ad litem

3.    Department of Juvenile Justice Services/Other State and Local Programs:

    (A)   Diversion services available through the court and probation;

    (B)   The child welfare system and services offered by the child welfare system;

    (C)   Nevada Department of Child and Family Services facility operations, release authority, and parole policies;

    (D)   Community resources and service providers for children and all alternatives to incarceration available in the community for children;

    (E)   Intake, programming, and education policies of local detention facility;

    (F)   Probation department policies and practices; and

    (G)   Gender specific programming available in the community.

4.    Specific Areas of Concern:

    (A)   Police interrogation techniques and <u>Miranda</u> consideration, as well as other Fourth, Fifth, and Sixth Amendment issues as they relate to children and adolescents;

    (B)   Substance abuse issues in children and adolescents;

    (C)   Special education laws, rights, and remedies;

**ADKT 411 Exhibit A: Page 46**

(D)   Cultural diversity;

(E)   Immigration issues regarding children;

(F)   Gang involvement and activity;

(G)   School-related conduct and zero tolerance policies ("school to prison pipeline" research, search and seizure issues in the school setting);

(H)   What factors lead children to delinquent behaviors;

(I)   Signs of abuse and/or neglect;

(J)   Issues pertaining to status offenders; and

(K)   Scientific technologies and evidence collection.

## Standard 3:  Adequate Time and Resources

Counsel should not carry a workload that by reason of its excessive size or representation requirements interfere with the rendering of quality legal service, endangers the juvenile's interest in the speedy disposition of charges, or risks breach of professional obligations. Before agreeing to act as counsel or accepting appointment by a court, counsel has an obligation to make sure that he or she has sufficient time, knowledge, and experience and will pursue adequate resources to offer quality legal services in a particular matter. If, after accepting an appointment, counsel finds he or she is unable to continue effective representation, counsel should consider appropriate caselaw and ethical standards in deciding whether to move to withdraw or take other appropriate action. Counsel must maintain an appropriate, professional office in which to consult with clients and witnesses and must maintain a system for receiving collect telephone calls from incarcerated clients.

## Standard 4:  Initial Client Interview

**(a)**   Preparing for the Initial Interview:  Prior to conducting the initial interview, the attorney should:

1.   be familiar with the elements of the offense and the potential punishment;

2.      obtain copies of relevant documents that are available, including copies of any charging documents, recommendations, and reports made by the Department of Juvenile Justice and law enforcement;

3.      be familiar with detention alternatives and the procedures that will be followed in setting those conditions;

4.      consider all possible defenses and affirmative defenses and any lesser-included offenses that may be available;

5.      consider the collateral consequences attaching to any possible sentencing, for example parole or probation revocation, immigration consequences, sex offender registration and reporting provisions, loss of driving privileges, DNA collection, school suspension or expulsion, consequences relating to public housing, etc.; and

6.      review the petition for any defects.

**(b)**    Counsel shall make every effort to conduct a face-to-face interview with the client as soon as practicable and sufficiently in advance of any court proceedings. In cases where the client is detained or in custody, counsel should make efforts to visit with the client within 24-48 hours after receiving the appointment. Counsel should:

1.      interview the client in a setting that is conducive to maintaining the confidentiality of communications between attorney and client;

2.      maintain ongoing communications and/or meetings with the client, which are essential to establishing a relationship of trust between the attorney and client;

3.      provide the client with a method to contact the attorney, including information on calling collect from detention facilities;

4.      utilize the assistance of an interpreter as necessary and seek funding for such interpreting services from the court;

5.      work cooperatively with the parents, guardian, and/or other person with custody of the child to the extent possible without jeopardizing the legal interests of the child;

6.      consider the client's age, developmental stage, mental retardation, and mental health diagnoses in all cases, understand the nature and

consequences of a competency proceeding, and resolve issues of raising or not raising competency in consultation with the client; and

7.    be alert to issues that may impede effective communication between counsel and client and ensure that communication issues such as language, literacy, mental or physical disability, or impairment are effectively addressed to enable the client to fully participate in all interviews and proceedings. Appropriate accommodations should be provided during all interviews, preparation, and proceedings, which might include the use of interpreters, mechanical or technological supports, or expert assistance.

## Standard 5:  Detention Hearing

**(a)**    When appropriate, counsel shall attempt to obtain the pretrial release of any client. Counsel shall advocate for the use of alternatives to detention for the youth at the detention hearing. Such alternatives might include electronic home monitoring, day or evening reporting centers, utilization of other community-based services such as after school programming, etc.  If counsel is appointed after the initial detention hearing or if the youth remains detained after the initial detention hearing, counsel shall consider the filing of a motion to review the detention decision.

**(b)**    If the youth's release from secure detention is ordered by the court, counsel shall carefully explain to the juvenile the conditions of release from detention and any obligations of reporting or participation in programming. Counsel should take steps to secure appointment of counsel to juveniles prior to the detention hearing.

## Standard 6:  Informal Supervision/Diversion

Counsel shall be familiar with all available alternatives offered by the court or available in the community. Such programs may include diversion, mediation, or other informal programming that could result in a juvenile's case being dismissed, handled informally, or referred to other community programming. When appropriate

and available, counsel shall advocate for the use of informal mechanisms that could steer the juvenile's case away from the formal court process.

## Standard 7:  Case Preparation and Investigation

A thorough investigation by defense counsel is essential for competent representation of youth in delinquency proceedings. The duty to investigate exists regardless of the youth's admissions or statements to defense counsel of facts or the youth's stated desire to plead guilty.  Counsel should:

**(a)**    obtain and examine all charging documents, pleadings, and discovery;

**(b)**    request and secure discovery, including exculpatory/impeaching information;

**(c)**    request the names and addresses of prosecution witnesses, their prior statements, and criminal records;

**(d)**    obtain the prior statements of the client and his or her delinquency history; all papers, tapes, or electronic recordings relevant to the case; expert reports and data upon which they are based, statements of co-defendants, an inspection of physical evidence, all documents relevant to any searches conducted, 911 tapes and dispatch reports, records of the client, including, but not limited to, educational, psychological, psychiatric, substance abuse treatment, children services records, court files, and prior delinquency records and be prepared to execute any needed releases of information or obtain any necessary court orders to obtain these records;

**(e)**    research and review the relevant statutes and caselaw to identify elements of the charged offense(s), defects in the prosecution, and available defenses;

**(f)**    conduct an in-depth interview of the client to assist in shaping the investigation;

**(g)**    consider seeking the assistance of an investigator when necessary and consider moving the court for funding to pay for the use of an investigator;

**(h)**    attempt to locate all potential witnesses and have them interviewed (if counsel conducts a witness interview, counsel should do so in the presence of a third person who can be called as a witness);

(i)     obtain the assistance of such experts as are appropriate to the facts of the case;

(j)     consider going to the scene of the alleged offense or offenses in a timely manner;

(k)     consider the preservation of evidence and document such by using photographs, measurements, and other means; and

(l)     be mindful of all requirements for reciprocal discovery and be sure to provide such in a timely manner.

## Standard 8:  Pretrial Motions

Counsel should consider filing an appropriate motion whenever there exists a good-faith reason to believe that the applicable law may entitle the client to relief that the court has discretion to grant. Counsel shall review all statements, reports, and other evidence and interview the client to determine whether any motions are appropriate. Counsel should timely file all appropriate pretrial motions and participate in all pretrial proceedings.

(a)     The decision to file pretrial motions should be made after thorough investigation and after considering the applicable law in light of the circumstances of the case. Among the issues that counsel should consider addressing in a pretrial motion are:

    1.     the pretrial detention of the client;

    2.     the constitutionality of the implicated statute(s);

    3.     defects in the charging process or the charging document;

    4.     severance of charges or defendants;

    5.     discovery issues;

    6.     suppression of evidence or statements;

    7.     speedy trial issues; and

    8.     evidentiary issues.

(b)     Counsel should only withdraw or decide not to file a motion after careful consideration, and only after determining whether the filing of a motion may be necessary to protect the client's rights against later claims of waiver or procedural default.

**(c)**     Motions should be filed in a timely manner and with an awareness of the effect of filing the motion on the client's speedy trial rights. When an evidentiary hearing is scheduled on a motion, counsel's preparation for the hearing should include:

    1.     investigation, discovery, and research relevant to the claim advanced;

    2.     subpoenaing of all helpful evidence and witnesses; and

    3.     full understanding of the burdens of proof, evidentiary principles, and trial court procedures applying to that hearing, including the benefits and costs of having the client testify.

**(d)**     Requests or agreements to continue a contested hearing date shall not be made without consultation with the client. Counsel shall diligently work to complete the investigation and preparation in order to be fully prepared for all court proceedings. In the event that counsel finds it necessary to seek additional time to adequately prepare for a proceeding, counsel should consult with the client and discuss seeking a continuance of the upcoming proceeding. Whenever possible, written motions for continuance made in advance of the proceeding are preferable to oral requests for continuance. All requests for a continuance should be supported by well-articulated reasons on the record in the event it becomes an appealable issue.

## Standard 9:  Plea Negotiations

**(a)**     Under no circumstances should defense counsel recommend to a client acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.

**(b)**     Counsel should:

    1.     with the consent of the client, explore diversion and other informal and formal admission of disposition agreements with regard to the allegations;

    2.     fully explain to the client the rights that would be waived by a decision to enter into any admission or disposition agreement;

    3.     keep the client fully informed of the progress of the negotiations;

4.     convey to the client any offers made by the prosecution and the advantages and disadvantages of accepting the offers;

5.     continue to preserve the client's rights and prepare the defense notwithstanding ongoing negotiations; and

6.     not enter into any admission or disposition agreement on behalf of the client without the client's authorization.

(c)    In developing a negotiation strategy, counsel must be completely familiar with:

1.     concessions that the client might offer the prosecution as part of a negotiated settlement, including, but not limited to:

(A)    not to proceed to trial on the merits of the charges;

(B)    to decline from asserting or litigating particular pretrial motions;

(C)    an agreement to fulfill specified restitution conditions and/or participation in community work or service programs, or in rehabilitation or other programs; and

(D)    providing the prosecution with assistance in prosecuting or investigating the present case or other alleged criminal/delinquent activity.

2.     benefits the client might obtain from a negotiated settlement, including, but not limited to:

(A)    that the prosecution will not oppose the client's release pending disposition or appeal;

(B)    that the client may enter a conditional plea to preserve the right to litigate and contest certain issues affecting the validity of the conviction;

(C)    that one or more of the charged offenses may be dismissed or reduced either immediately or upon completion of a deferred prosecution agreement;

(D)    that the client will not be subject to further investigation or prosecution for uncharged alleged delinquent conduct;

(E)    that the client will receive, with the agreement of the court, a specified sentence or sanction;

(F)   that the prosecution will take, or refrain from taking, at the time of disposition and/or in communications with the probation department a specified position with respect to the sanction to be imposed on the client by the court; and

(G)   that the client will receive, or the prosecution will recommend, specific benefits concerning the client's place and /or manner of confinement and/or release on probation.

**(d)**   In the decision-making process, counsel should:

1.   inform the client of any tentative negotiated agreement reached with the prosecution, explain to the client the full content of the agreement, and explain advantages, disadvantages, and potential consequences of the agreement; and

2.   not attempt to unduly influence the decision, as the decision to enter a plea of guilty rests solely with the client; where counsel reasonably believes that acceptance of a plea offer is in the best interest of the client, counsel should advise the client of the benefits of this course of action.

**(e)**   Prior to the entry of the plea, counsel should meet with the client in a confidential setting that fosters full communication and:

1.   make certain that the client understands the rights he or she will waive by entering the plea and that the client's decision to waive those rights is knowing, voluntary, and intelligently made;

2.   make certain that the client fully and completely understands the conditions and limits of the plea agreement and the maximum punishment, sanctions, and other consequences the client will be exposed to by entering the plea; and

3.   explain to the client the nature of the plea hearing and prepare the client for the role he or she will play in the hearing, including answering questions of the judge, and providing a statement concerning the offense.

**(f)**   After entry of the plea, counsel should:

1.   be prepared to address the issue of release pending disposition hearing. Where the client has been released, counsel should be

**ADKT 411 Exhibit A: Page 54**

prepared to argue and persuade the court that the client's continued release is warranted and appropriate. Where the client is in custody prior to the entry of the plea, counsel should, where practicable, advocate for the client's release pending disposition; and

2.      make every effort to review and explain the plea proceedings with the client and to respond to any client questions and concerns.

## Standard 10:  Adjudicatory Hearing

(a)      Counsel should develop a theory of the case in advance of the adjudicatory hearing. Counsel shall issue subpoenas and obtain court orders for all necessary evidence to ensure the evidence's availability at the adjudicatory hearing. Sufficiently in advance of the hearing, counsel shall subpoena all potential witnesses. Where appropriate, counsel should have the following materials available at the time of the contested hearing:

1.      copies of all relevant documents filed in the case;

2.      relevant documents prepared by investigators;

3.      outline or draft of opening statement;

4.      cross-examination plans for all prospective prosecution witnesses;

5.      direct examination plans for all prospective defense witnesses;

6.      copies of defense subpoenas;

7.      prior statements of all prosecution witnesses;

8.      prior statements of all defense witnesses;

9.      reports from all experts;

10.     a list and copies of originals of defense and prosecution exhibits;

11.     copies of all relevant statutes or cases; and

12.     outline or draft of closing argument.

(b)      Counsel should be fully informed as to the rules of evidence and the law relating to all stages of the trial process and should be familiar with legal and evidentiary issues that can reasonably be anticipated to arise in the trial.

(c)      Counsel should decide if it is beneficial to secure an advance ruling on issues likely to arise at trial (e.g., admissibility of evidence), and where appropriate,

counsel should prepare motions and memoranda in support of the client's position.

**(d)**   Throughout the adjudicatory process, counsel should endeavor to establish a proper record for appellate review. As part of this effort, counsel should request, whenever necessary, that all discussions and rulings be made on the record.

**(e)**   Counsel should advise the client as to suitable courtroom dress and demeanor.

**(f)**   Counsel should plan with the client the most convenient system for conferring throughout the contested hearing.

**(g)**   During the adjudicatory hearing, counsel shall raise objections on the record to any evidentiary issues; in order to best preserve a client's appellate rights, counsel shall object on the record and state the grounds for such objection following the courts denial of any defense motion.

**(h)**   Counsel shall ensure that an official court record is made and preserved of any pretrial hearings and the adjudicatory hearing.

**(i)**   Counsel shall utilize expert services when appropriate and petition the court for assistance in obtaining expert services when necessary.

**(j)**   Counsel should anticipate weaknesses in the prosecution's proof and consider appropriate motions for judgment of acquittal at all appropriate stages of the litigation.

**(k)**   Counsel should consider the strategic advantages and disadvantages of entering into any stipulations.

**(l)**   In preparing for cross-examination, counsel should:

    1.    be prepared to question witnesses as to the existence of prior statements that they may have made or adopted;

    2.    consider the need to integrate cross-examination, theory, and theme of the defense;

    3.    avoid asking unnecessary questions that may hurt the defense case;

    4.    anticipate evidence that the prosecution may call in its case-in-chief and on rebuttal;

    5.    create a cross-examination plan for all anticipated witnesses;

6.    review all prior statements and testimony of the witnesses in order to be aware of all inconsistencies or variances; and

7.    review relevant statutes, regulations, and policies applicable to police witnesses and consider a pretrial motion or voir dire examination of prosecution experts to determine qualifications of experts or reliability of the anticipated opinion.

## Standard 11:  Presenting the Client's Case

**(a)**    Counsel should develop, in consultation with the client, an overall defense strategy. In deciding on defense strategy, counsel should consider whether the client's interests are best served by not putting on a defense case and instead relying on the prosecution's failure to meet its constitutional burden of proving each element beyond a reasonable doubt.

**(b)**    Counsel should discuss with the client all of the considerations relevant to the client's decision to testify. Counsel should also be familiar with his or her ethical responsibilities that may be applicable if the client insists on testifying untruthfully. Counsel should maintain a record of the advice provided to the client and the client's decision concerning whether to testify.

**(c)**    Counsel should be aware of the elements of any affirmative defense and know whether, under the applicable law of the jurisdiction, the client bears a burden of persuasion or a burden of production.

**(d)**    In preparing for presentation of a defense case, counsel should, where appropriate, do the following:

1.    develop a plan for direct examination of each potential witness;

2.    determine the implications that the order of witnesses may have on the defense case;

3.    determine which facts necessary for the defense case can be elicited through the cross-examination of the prosecution's witnesses;

4.    consider the possible use of character witnesses;

5.    consider the need for expert witnesses and what evidence must be submitted to lay the foundation for the expert's testimony;

6.    review all documentary evidence that must be presented; and

7.    review all tangible evidence that must be presented.

**(e)**    In developing and presenting the defense case, counsel should consider the implications it may have for a rebuttal by the prosecutor.

**(f)**    Counsel should prepare all witnesses for direct and possible cross-examination. Where appropriate, counsel should also advise witnesses of suitable courtroom dress and demeanor.

**(g)**    Counsel should conduct redirect examination as appropriate.

## Standard 12:  Objections to the Hearing Master's Recommendations

Counsel shall advise client of the role of the Hearing Master and the procedure and purpose of filing objections to the Hearing Master's findings and recommendations. Counsel shall review the Hearing Master's decision for possible meritorious grounds for objection. If the Hearing Master's decision does not contain findings of facts and conclusions of law, counsel shall request in writing such findings of facts and conclusions of law in accordance with NRS 62B.030(3)  Counsel shall ensure that the transcript of the proceeding is timely obtained and objections are timely filed in accordance with NRS 62B.030(4). Counsel shall draft and file objections and supplemental points and authorities with specificity and particularity and participate in the oral argument if scheduled.

## Standard 13:  Preparation for the Disposition Hearing

Preparation for disposition should begin upon appointment. Counsel should:

**(a)**    be knowledgeable of available dispositional alternatives both locally and outside of the community;

**(b)**    review, in advance of the dispositional hearing, the recommendations of the probation department or other court department responsible for making dispositional recommendations to the court;

**(c)**    inform their client of these recommendations and other available dispositional alternatives; and

(d)     be familiar with potential support systems of the client such as school, family, and community programs and consider whether such supportive services could be part of a dispositional plan.

## Standard 14:  The Disposition Process

During the disposition process, counsel should:

(a)     correct inaccurate information that may be detrimental to the client and object to information that is not properly before the court in determining the disposition;

(b)     present to the Court all known and reasonably available mitigating and favorable information, including relevant expert testimony or reports;

(c)     develop a plan that seeks to achieve the least restrictive and burdensome disposition alternative and that can reasonably be obtained based on the facts and circumstances of the offense, the client's background, the applicable disposition and alternatives, and other information pertinent to the disposition decision;

(d)     consider filing a memorandum setting forth the defense position with the court prior to the dispositional hearing;

(e)     maintain contact with the client prior to the disposition hearing and inform the client of the steps being taken in preparation for sentencing;

(f)     obtain from the client and/or the client's family relevant information concerning his or her background and personal history, prior delinquency record, employment history, education, and medical history and condition and obtain from the client sources that can corroborate the information provided;

(g)     request any necessary and appropriate client evaluations, including those for mental health and substance abuse;

(h)     ensure the client has an opportunity to examine the disposition report;

(i)     inform the client of his or her right to speak at the disposition hearing and assist the client in preparing the statement, if any, to deliver to the court;

(j)       inform the client of the effects that admissions and other statements may have upon an appeal, retrial, or other judicial proceedings;

(k)      collect affidavits to support the defense position when appropriate and prepare witnesses to testify at the sentencing hearing and request the opportunity to present tangible and testimonial evidence;

(l)       prepare to address victim participation either through the victim impact statement or by direct testimony at the disposition hearing; and

(m)     ensure that an official court record is made and preserved of any disposition hearing.

## Standard 15: The Disposition Report

Counsel should:

(a)      become familiar with the procedures concerning the preparation, submission, and verification of the disposition report;

(b)      prepare the client for the interview with the official preparing the disposition report;

(c)      determine whether a written disposition report will be prepared and submitted to the court prior to the disposition hearing; where preparation of the report is optional, counsel should consider the strategic implications of requesting report;

(d)      provide to the official preparing the report relevant information favorable to the client, including, where appropriate, the client's version of the offense;

(e)      attend any interview of the client by an agency disposition investigator where appropriate; review the completed report prior to sentencing;

(f)      take appropriate steps to ensure that erroneous or misleading information that may harm the client is deleted from the report; and

(g)      take reasonable steps to ensure that a corrected copy of the report is sent to corrections officials if there are any amendments made to the report by the court.

**Standard 16:  Post-Disposition Responsibilities/Advocacy**

Following the disposition hearing, counsel should:

**(a)** review the disposition order to ensure that the sentence is clearly and accurately recorded and take steps to correct any errors and ensure that it includes language regarding detention credits and plea agreements;

**(b)** be aware of sex offender registration requirements and other requirements, both state and federal, imposed on sex offenders and communicate those requirements to the client;

**(c)** be familiar with the procedure for sealing and expunging records, advise the client of those procedures, and utilize those procedures when available;

**(d)** be familiar with the procedures to request a new contested hearing, including the time period for filing such a motion, the effect it has upon the time to file a notice of appeal, and the grounds that can be raised and advise the client of his or her rights with regard to those procedures;

**(e)** inform the client of his or her rights to representation and to appeal an adjudication after a contested hearing, after a conditional plea or after an admission that was not entered in a knowing, intelligent, and voluntary manner and document the client's decision regarding appeal;

**(f)** ensure that the notice of appeal and request for appointment of counsel is filed, or that the client has obtained or the court has appointed, appellate counsel in a timely manner even if counsel believes that an appeal will not be successful or is not cognizable;

**(g)** timely respond to requests from appellate counsel for information about or documents from the case, when appellate counsel was not trial counsel;

**(h)** inform the client of any right that may exist to be released pending disposition of the appeal;

**(i)** consider requesting a stay of execution of the judgment to permit the client to report directly to the place of confinement, if a custodial sentence is imposed; and

(j)       include in the advice to the client, an explanation of the limited nature of the relief available on direct appeal and, where appropriate, an explanation of the remedies available to him or her in post-adjudication proceedings.

## Standard 17:  Transfer Proceedings to Adult Court

(a)       Transfer proceedings require special knowledge and skill due to the severity of the consequence of the proceedings. Counsel shall not undertake representation of children in these areas without sufficient experience, knowledge, and training in these unique areas. It is recommended that counsel representing children in transfer proceedings have litigated at least 2 criminal jury trials or be assisted by co-counsel with the requisite experience.

(b)       Counsel representing juveniles in transfer proceedings should:

1.     be fully knowledgeable of adult criminal procedures and sentencing;

2.     be fully knowledgeable of the legal issues regarding probable cause hearings and transfer proceedings;

3.     investigate the social, psychological, and educational history of the child;

4.     retain or employ experts including psychologists, social workers, and investigators in order to provide the court with a comprehensive analysis of the child's strengths and weaknesses in support of retention of juvenile jurisdiction;

5.     be knowledgeable of the statutory findings the court must make before transferring jurisdiction to the criminal court and any caselaw affecting the decision;

6.     be prepared to present evidence and testimony to prevent transfer, including testimony from teachers, counselors, psychologists, community members, probation officers, religious associates, employers, or other persons who can assist the court in determining that juvenile jurisdiction should be retained;

7.     ensure that all transfer hearing proceedings are recorded;

8.     preserve all issues for appeal; and

9.   investigate possible placements for the client if the case remains in juvenile court.